UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

EDWINA F. FIELDS

VERSUS

DEPARTMENT OF PUBLIC SAFETY
And ELAYN HUNT CORRECTIONAL
CENTER

CIVIL ACTION

NO. 3:11-CV-00101

JUDGE BRIAN JACKSON

## RULING AND ORDER ON MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

This matter is before the Court on a motion by the Department of Public Safety ("Defendant" or "LDPSC") to dismiss (doc. 13-1) pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). Edwina Fields ("Plaintiff") opposes the motion (doc. 15), and Defendant has replied to Plaintiff's opposition (doc. 18).

## BACKGROUND

Plaintiff, a black female employee of Elayn Hunt Correctional Center ("Elayn Hunt"), began working for Defendant on January 11, 1999, as a Sergeant and later as a Master Sergeant (doc. 1, p. 2; doc. 15, p. 2). She asserts that throughout the many years of her employment she experienced discrimination based on her age, race, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination and Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") (doc. 1, p. 1-3). Although not specifically pleaded in her

complaint, Plaintiff also avers that she was discriminated and retaliated against because she exercised leave under the FMLA, 29 U.S.C. §2601, et seq. (doc. 1, p. 3).

Plaintiff further alleges that on or around December 31, 2008, she requested leave under the FMLA after "exacerbating a pre-existing post-traumatic stress or mental disorder" (doc. 15, p. 2). Upon returning to work, Plaintiff alleges that she was assigned to D1 cell block, which was "unreasonably stressful," and she was denied accommodation to be moved to a less stressful work environment in violation of the ADA (doc. 15, p. 2). Plaintiff further alleges she was forced to remain in D1 cell block because of her race (doc. 15, p. 3).

Plaintiff claims she was denied recognition and awards for responding to an inmate's attempted hanging in retaliation for exercising leave under the FMLA. (doc. 15, p.3) Moreover, she alleges the Assistant Warden Frederick Boutte said "those who have received FMLA cannot receive a reward" (doc. 15, p. 3). Additionally, Plaintiff asserts she was denied a position that she applied for in the 24 hour unit ward on the basis of age discrimination (doc. 15, p. 3).

As a result of the alleged discrimination, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") (doc. 15, p. 3-4). The EEOC granted Plaintiff a right to sue letter, and she filed the present suit on February 23, 2011 (doc. 1). In lieu of an answer, Defendant filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, respectively (doc. 13). In opposition, Plaintiff argues that the Court has

subject matter jurisdiction under 28 U.S.C §1331 (doc. 15, p. 4). Plaintiff also argues that the Elayn Hunt Correction Center is not entitled to Eleventh Amendment immunity because the prison receives federal funding (doc. 15, p. 4-5). Finally, Plaintiff argues that she has stated a valid cause of action for her disability, discrimination, and FMLA claims (doc. 15, p. 6).

## LAW AND DISCUSSION

### I.   RULE 12(b)(1) SUBJECT MATTER JURISDICTION

Defendant asserts that this Court lacks the requisite subject matter jurisdiction over Plaintiff's ADEA claims as a result of Defendant's Eleventh Amendment immunity from suit in federal court (doc. 13-1, p. 6). Plaintiff argues that because she alleges federal civil rights violations "on the face of her complaint," any Fed. R. Civ. P. 12(b)(1) motion is defeated (doc. 15, p. 1).  Plaintiff asserts that federal question jurisdiction exists as provided by §§ 1331 and 1332 (doc. 15, p. 4). Plaintiff further alleges that this Court has subject matter jurisdiction over the claim by virtue of the presence of federal questions and the acceptance of federal funds (doc. 15, p. 5).

In asserting a court's subject matter jurisdiction, the burden of proof lies on the party seeking to invoke the court's jurisdiction. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). In federal question cases, the party must demonstrate a non-frivolous claim based on federal law. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939). In examining a Rule 12(b)(1) motion, a district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The Fifth Circuit has held that when a

Fed. R. Civ. P. 12(b)(1) motion is filed concurrently with other Rule 12 motions, the district court must first address subject matter jurisdictional issues under Rule 12(b)(1) before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). Moreover, when a district court finds it lacks subject matter jurisdiction, its determination is not on the merits of the case and does not bar the plaintiff from pursuing a claim that has proper jurisdiction. *Id.* When a State is protected by Eleventh Amendment immunity, federal courts are divested of subject matter jurisdiction. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, (1974).

### a.  Whether LDPSC is an "Arm of the State"

Defendant alleges that the LDPSC is an arm of the state and, therefore, is entitled to Eleventh Amendment immunity which divests this Court of subject matter jurisdiction over Plaintiff's ADEA claims (doc. 13-1, p. 4, 6). Although, Plaintiff does not address the issue of whether LDPSC is an arm of the state in her opposition, she alleges that Eleventh Amendment immunity does not extend to prisons such as Elayn Hunt because it receives federal funding[1] (doc. 15, p. 5).

The Eleventh Amendment provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state."

---

[1] Plaintiff argues that because Louisiana State prisons have received $3,149,115.00 in federal funding, Elayn Hunt and other state prisons have waived their Eleventh Amendment immunity (doc. 15, p. 6).

U.S. CONST. amend. XI. Though the language of the Eleventh Amendment does not specifically address suits against the State by its own citizens, the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal court by her own citizens as well as citizens of other States." *Edelman v. Jorda*n, 415 U.S. 651, 662–63 (1974) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). Additionally, the scope of the Eleventh Amendment extends to actions against state agencies or entities that are classified as "arms of the state." *Regents of the University of California v. John Doe,* 519 U.S. 425, 429 (1997); *Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 318, 326 (5th Cir. 2002).

When a state is the "real, substantial party in interest," the Eleventh Amendment bars a suit against state officials. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). A state is the real substantial party in interest, and is entitled to an invocation of sovereign immunity from suit, regardless of whether the individual officers are nominal defendants. *Ford Motor Co. v. Dep't of Treasury of State of Indiana,* 323 U.S. 459, 464 (1945) (*overruled by Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) (holding that a state's removal of a suit to federal court resulted in that state's waiver of Eleventh Amendment immunity)).

To accurately determine whether LDPSC may assert Eleventh Amendment immunity, the Court must establish whether LDPSC is an "arm of the state." The Fifth Circuit has instructed district courts to consider six factors when determining if an agency may be appropriately deemed an "arm of the state": 1) whether state

statutes and case law view the entity as an arm of the state; 2) the source of the entity's funding; 3) the entity's degree of local autonomy; 4) whether the entity is concerned primarily with local, as opposed to statewide problems; 5) whether the entity has the authority to sue and be sued in its own name; and 6) whether the entity has the right to hold and use property. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 327 (5th Cir. 2002). Although no one factor is dispositive, courts deem the source of the entity's funding as particularly important because the chief goal of the Eleventh Amendment is to protect the state treasuries. *Id.* Thus, "the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 907 (5th Cir. 1987)).

In this case, Defendant is a state agency created by the State of Louisiana under La. Rev. Stat. § 40:1301. Likewise, if any monetary judgment is obtained against the Defendant, LDPSC, it will be paid from the State treasury. *Champagne*, 188 F.3d at 313. In applying the six factor test, the Fifth Circuit has found the LDPSC to be an "arm of the state."[2] *Id.* Based upon the Fifth Circuit's finding, this Court finds that Defendant is an "arm of the state" and may assert sovereign immunity against suit in federal court.

---

[2] The Fifth Circuit held:

> "All but the last two factors favor Eleventh Amendment immunity for LDPSC. Louisiana statutes and cases place the LDPSC within the executive branch; the LDPSC is state funded; the head of the LDPSC is appointed by the Governor and serves at his pleasure; and the agency is charged with state-wide law enforcement and rehabilitation, which are described as "functions of the state." That LDPSC may sue and be sued, and hold property, is outweighed by other factors, particularly State liability for LDPSC judgments."

However, the Eleventh Amendment is not an absolute bar from suit in federal court. Three exceptions may affect a State's ability to raise sovereign immunity as a defense: 1) a State may waive its Eleventh Amendment immunity by consenting to suit in federal court;[3] 2) Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority;[4] and 3) the *Ex Parte Young* doctrine may apply.[5] Defendant argues that none of the exceptions apply in the instant case (doc. 13-1, p. 6,8). Plaintiff, on the other hand, asserts that Defendant has waived its constitutional immunity, or in the alternative that Plaintiff be allowed 30 days to amend her petition (doc. 15, p. 5).

### b. Waiver of immunity by consent to suit

Defendant asserts that it did not voluntarily consent to suit in federal court or voluntarily invoke federal court jurisdiction in this matter (doc. 13-1, p. 7). The Supreme Court has consistently held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst*, 465 U.S. at 100 (citing *Employees of Dept. of Pub. Health & Welfare, Missouri v. Dep't of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 280 (1973)). However, a State's sovereign immunity is "a personal privilege which it may waive at pleasure." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (*citing Clark v. Barnard*, 108 U.S. 436, 446 (1883)).

---

[3] *Clark v. Barnard*, 108 U.S. 436, 446 (1883)
[4] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (2000).
[5] This Court will not address the application of the *Ex Parte Young* doctrine as the Court takes note that the Plaintiff has not named a state official as a defendant in the present suit.

Applying a stringent test for determining whether a State has waived immunity, a court will find waiver if either: (1) the state voluntarily invokes federal court jurisdiction; or (2) the state makes a "clear declaration" that it intends to submit itself to federal court jurisdiction. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985); *Coll. Sav. Bank*, 527 U.S. at 675–76 (*citing Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 284 (1906); *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)). Thus, when a State is sued in federal court, there must be an affirmative waiver of its immunity.

Defendant cites La. Rev. Stat. 13:5106(A), which provides "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court" (doc. 13, p. 7). Here, the State has not voluntarily invoked federal court jurisdiction (doc. 13-1, p. 7). Thus, the Court finds that LDPSC, as an arm of the State of Louisiana, did not voluntarily invoke this Court's jurisdiction nor did it make a clear declaration expressing its intent to submit itself to the jurisdiction of this Court.

### 1.    Immunity by acceptance of federal funds

Plaintiff relies on *Douglas v. California Department of Youth Authority*, 271 F.3d 812 (9th Cir. 2001), *amended* 271 F.3d 910 (9th Cir. 2001) to assert that Defendant waived its Eleventh Amendment immunity by receiving federal funds (doc. 15, p. 5). Under *Douglas*, which relied on the Supreme Court's opinion in *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985), a State waives its sovereign immunity by "accept[ing] federal funds where the funding statute 'manifests a clear intent to condition participation in the programs funded under the Act on a State's

8

consent to waive its constitutional immunity.'" *Douglas,* 271 F.3d at 819. As such, if a funding statute conditions acceptance of funds on a State's waiver of its sovereign immunity, such a waiver occurs if a State does in fact accept such funds. *Id.* However, in *Atascardero,* the Supreme Court plainly stated that "mere receipt of federal funds does not establish that a State has consented to suit in federal court." 473 U.S. at 246–47 (citations omitted). Rather, such a waiver must be expressed in the language of the statute. *Id.* at 247.

In *Douglas*, the inquiry concerned a specific statute, the Rehabilitation Act, which contained language that clearly conditioned the waiver of Eleventh Amendment immunity based on the acceptance of federal funds. 271 F.3d at 820. Unlike each of the statutes involved in the instant case,[6] the Rehabilitation Act manifests a clear intent to condition a state's participation and receipt of federal funding on its consent to waive its Eleventh Amendment immunity by including an express waiver of immunity when accepting federal funds under the Rehabilitation Act. 42 U.S.C. § 2000d-7.[7]

The Fifth Circuit has held that claims under federal statues do not override the Eleventh Amendment bar unless the statute contains a clear showing of Congressional intent to abrogate the bar. *Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987). Unlike the Rehabilitation Act, the statutes involved in the instant case show no such intent. Accordingly, the Court disagrees with Plaintiff's assertion

---

[6] Namely, the ADA, ADEA, Title VII, and FMLA.
[7] Because the 9th Circuit in *Douglas* held that California waived its sovereign immunity through acceptance of federal funds, the issue of whether Congress validly abrogated the State of California's sovereign immunity was not addressed.

that Defendant's receipt of federal funds should be deemed a waiver of its Eleventh Amendment immunity. Therefore, Defendant has not waived its immunity in this regard.

### c. Congressional Abrogation of State Sovereign Immunity

Congress may abrogate a State's sovereign immunity and authorize a private party to bring a federal suit against unconsenting states in the exercise of its power to enforce the Fourteenth Amendment. *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 80 (2000); *accord Fitzpatrick v. Bitzer,* 427 U.S. 445, 456 (1976). The Fourteenth Amendment requires States to surrender a portion of their Eleventh Amendment sovereignty as it empowers Congress to authorize private suits against nonconsenting States pursuant to its § 5 enforcement power. *Alden v. Maine,* 527 U.S. 706, 756 (1999).

In order to determine whether Congress has abrogated state sovereign immunity by enacting a statute, district courts apply the two-part test established by the Supreme Court in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44 (1996), asking two questions, "[F]irst, whether Congress has unequivocally expressed its intent to abrogate the immunity; and second, whether Congress has acted pursuant to a valid exercise of power" in abrogating the immunity. 517 U.S. at 55 (citing *Green v. Mansour,* 474 U.S. 64, 68 (1985)).

To determine whether a federal statute subjects States to suits by individuals, the Court must apply a "simple but stringent test: Congress may abrogate the States constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute."

*Kimel,* 528 U.S. at 73 (citations omitted). Congress must act constitutionally pursuant to a valid exercise of power under the § 5 enforcement clause of the Fourteenth Amendment if, and only if, there is a congruence and proportionality between the injury or discriminatory classification to be prevented or remedied and the means adopted to achieve that end. *Kazmier v. Widmann,* 225 F.3d 519, 523 (5th Cir. 2000); *accord Kimel,* 528 U.S. at 80 (The Fourteenth Amendment's enforcement clause grants Congress the authority to abrogate the state's sovereign immunity). Further, Congress's authority is most broad when the injury or discriminatory classification is based on race or sex. *Kazmier,* 225 F.3d at 524.

### 1.    Abrogation under the ADEA.

While Plaintiff did not address the issue in its reply memorandum in opposition, Defendant asserts that Congress did not abrogate the State's immunity under the ADEA (doc. 13-1, p. 10). Defendant asserts that as an arm of the State, it is immune from Plaintiff's ADEA claims by virtue of the State's sovereign immunity, thereby divesting the Court of subject matter jurisdiction over Plaintiff's claims under the ADEA (doc. 13, p. 10). The validity of an abrogation of sovereign immunity by Congress is satisfied by two prongs: (1) Congress unequivocally expressed its intent to abrogate the immunity, and (2) Congress acted pursuant to a valid exercise of power. *Seminole Tribe of Florida,* 517 U.S. at 55 (citations omitted); *see also Kimel,* 528 U.S. at 73.

In *Kimel v. Florida Bd. of Regents,* 528 U.S. 62 (2000), the Supreme Court ruled that the ADEA met the first, but not the second prong of the *Seminole* test. 528 U.S. at 67. Thus, in enacting the ADEA, Congress did not properly abrogate the

States' Eleventh Amendment immunity from suit by citizens. *Id.* (Florida State University employees brought suit for money damages against the Florida Board of Regents under the ADEA for age-based discrimination). The Court held that the second prong of the *Seminole Tribe* test was not met as Congress' abrogation of the States' immunity was invalid because the power to enact the ADEA was derived from Congress' Article I commerce power. *Id.* at 79. Therefore, in light of the Supreme Court's guidance in this matter, the Court agrees with Defendant's argument that the State of Louisiana's sovereign immunity was not abrogated by any provision of the ADEA. Furthermore, the Department of Public Safety, as an arm of the State of Louisiana, is protected by Eleventh Amendment sovereign immunity, and the Court lacks subject matter jurisdiction over the claims arising from provisions of the ADEA. Therefore, Defendant's motion to dismiss for lack of subject matter jurisdiction is granted as it concerns Plaintiff's claims under the ADEA.

### 2.      Abrogation under Title I of the ADA

Although neither Plaintiff nor Defendant addressed this issue in their memoranda, it must be noted that the Court lacks jurisdiction over Plaintiff's ADA Title I claims. Title I of the ADA prohibits the State and other employers from "discriminat[ing] against a qualified individual with a disability because of th[at] disability ... in regard to ... terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a). This Court finds that Plaintiff's claims relate to her employment at Elayn Hunt and thus fall under Title I of the ADA.

Congress has not validly abrogated states' Eleventh Amendment immunity under Title I of the ADA. *Cf. Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 364 (2001), *and Douglas v. California Dept. of Youth Auth.,* 271 F.3d 812, 821 *amended,* 271 F.3d 910 (9th Cir. 2001)[8], *with Clark v. State of Cal.,* 123 F.3d 1267, 1269 (9th Cir. 1997). In *Bd. of Trustees of Univ. of Alabama v. Garrett,* the Supreme Court held that the Eleventh Amendment bars ADA Title I claims against States. 531 U.S. at 364.[9] In applying the *Seminole Tribe* test,[10] the Supreme Court found Congress lacked evidence of a significant pattern of irrational state discrimination in employment of the disabled. *Id.* at 368. "Congress is the final authority as to desirable public policy, but in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation." *Id.* at 374.

Thus, Title I of the ADA does not meet the requirements of the "congruence and proportionality" test as the rights and remedies created by the ADA are not "congruent and proportional" to the problem of States' discrimination against employees with disabilities. *Id.* at 372. As such, the Court dismisses Plaintiff's claims under Title I of the ADA for lack of subject matter jurisdiction.

---

[8] See discussion *supra* under Subheading I(a)(i)

[9] *But cf. United States v. Georgia,* 546 U.S. 151, 159 (2006) (holding that Title II of the ADA validly abrogates State sovereign immunity for State conduct that actually violates the Fourteenth Amendment).

[10] *See* discussion *supra* under Subheading I(a)

### 3.    Abrogation under the self-care provision of the FMLA

Though neither Plaintiff nor Defendant addressed this issue in their memoranda, the Court lacks subject matter jurisdiction over Plaintiff's claims under the self-care provision of the Family and Medical Leave Act (FMLA).[11] Plaintiff alleges that on or around December 31, 2008, she requested leave under the FMLA after exacerbating a pre-existing post-traumatic stress or mental disorder (doc. 15, p. 2). The Court finds that Plaintiff's leave under the FMLA falls under 29 U.S.C. § 2612(a)(1)(d), the self-care provision.

Congress may properly abrogate a state's immunity in federal court if Congress (1) makes its intention to abrogate unmistakably clear in the language of the statute; and (2) acts pursuant to a valid exercise of power under §5, the Enforcement Clause of the Fourteenth Amendment. *Seminole Tribe of Florida,* 517 U.S. at 55 (citations omitted); *Nevada Dept. of Human Res. v. Hibbs,* 538 U.S. 721, 726 (2003). The FMLA meets the first prong of this test in that the Act clearly enables employees to seek damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction," and Congress has defined "public agency" as both "the government of a State or political subdivision thereof" and "any agency...a State, or a political subdivision of a State...." 29 U.S.C.

---

[11] The Family and Medical Leave Act of 1993 provides that employees may take up to 12 work weeks of unpaid leave per year provided for: (A) the birth and care of a son or daughter, (B) the adoption or foster care of a son or daughter, (C) the care for spouse, son, daughter, or parent under a serious health condition, or (D) the care for an employee's own serious health condition that hinders the employee's ability to work. 29 U.S.C. § 2612(a)(1).

§ 2617(a)(2), § 203(x), § 2611(4)(A)(iii). The Court in *Hibbs* held that Congress, in enacting the FMLA, has satisfied the clear statement requirement. 538 U.S. at 726.

To meet the second prong of the *Seminole* test, a congruence must be shown between the evil or wrong that Congress intended to remedy and the means by which Congress adopted to remedy that evil or wrong under § 5. *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 1333 (2012). However, the self-care provision of the FMLA, 29 U.S.C. § 2612(a)(1)(d), does not evidence a congruence between a pattern of state constitutional violations under the Fourteenth Amendment with narrowly drawn remedies to prevent those violations. *See, e.g., Id.* at 1334; *Kazmier*, 225 F.3d at 525.[12] Evidence does not show that states had facially discriminatory self-care leave policies or administrated self-care leave policies in a discriminatory way. *Coleman*, 132 S. Ct. at 1333. Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the evidenced violations to abrogate the States' immunity from suits for damages under § 5. *Id.* at 1338.

In the absence of pervasive gender-based discrimination in state sick leave policies, the congressional purpose for enacting the self-care provision is unrelated and does not meet the congruence and proportionality test. *Id.* at 1334. Thus, in enacting the self-care provision of the FMLA, Congress did not validly abrogate the State's Eleventh Amendment immunity from suit. *Id.* at 1338. Because Plaintiff took leave under the self-care provision of the FMLA, 29 U.S.C. § 2612(a)(1)(d),

---

[12] *But cf. Hibbs*, 538 U.S. at 737 (holding that the family-care provision of the FMLA is a valid abrogation of the State's sovereign immunity based on a well-patterned history of sex discrimination in family-leave policies).

Defendant is immune from Plaintiff's claims arising under the FMLA. Therefore, the Court dismisses Plaintiff's claims under the FMLA for lack of subject matter jurisdiction.

### 4.      Abrogation under Title VII.

Lastly, though neither Plaintiff nor Defendant addressed this issue in their memoranda, this Court has subject matter jurisdiction over Plaintiff's Title VII claims. Congress may properly abrogate a state's immunity in federal court if Congress both (1) makes its intention to abrogate unmistakably clear in the language of the statute and (2) acts pursuant to a valid exercise of power under § 5, the Enforcement Clause of the Fourteenth Amendment. *Seminole Tribe,* 517 U.S. at 55 (citations omitted).

Because Title VII contains the "requisite clear statement of congressional intent to abrogate and that Congress has the power to abrogate," States are not entitled to sovereign immunity with respect to Title VII claims. *Ussery v. State of La. Through Dept. of Health & Hospitals*, 962 F. Supp. 922, 927 (W.D. La. 1997), *aff'd and remanded sub nom. Ussery v. State of La. on Behalf of Louisiana Dept. of Health & Hospitals*, 150 F.3d 431 (5th Cir. 1998). Further, it is well-settled 5th Circuit law that Title VII has clearly abrogated the States' Eleventh Amendment immunity. *Accord, Pegues v. Mississippi State Employment Serv.*, 899 F.2d 1449, 1453 (5th Cir.1990); *Whiting v. Jackson State Univ.*, 616 F.2d 116, 127 n. 8 (5th Cir.1980). Therefore, the Court has subject matter jurisdiction over Plaintiff's claims under Title VII.

## II.   RULE 12(b)(6) FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Defendant asserts that Plaintiff has failed to state a claim under which relief can be granted with respect to the ADA, Title VII, FMLA, and punitive damages (doc. 13-1, p. 12-17). Plaintiff asserts that her pleadings state viable claims for which relief can be granted (doc. 15, p. 1). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly,* 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly,* 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

However, when considering a Rule 12(b)(6) motion, the district court must examine the allegations in the complaint to determine whether any possible theory

provides relief. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994). The 5th Circuit has recognized that a 12(b)(6) motion is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 598 (1969)).

### a. Plaintiff's ADA Claim

The Court declines to address whether Plaintiff's claims under Title I of the ADA should be dismissed pursuant to Rule 12(b)(6) because it lacks subject matter jurisdiction over these claims.[13]

### b. Plaintiff's Racial Discrimination Claim under Title VII

Plaintiff contends that she was subject to racial discrimination because her request for a transfer from her stressful D1 cell block assignment was denied while the request of a white female, Lt. Lacoste, was granted (doc. 15, p. 7). Defendant alleges that Lt. Lacoste was transferred due to "an appalling act of sexual violence" against her (doc. 13-1, p. 14). Plaintiff also asserts in her original complaint that Lt. Lacoste was "subjected to aggravated sexual offenses" (doc. 1, ¶ 10). Plaintiff, however, asserts that the disparate treatment between Plaintiff, who is African American, and Lt. Lacoste creates a prima facie case for racial discrimination, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)[14] (doc. 15, p. 7-8). Defendant asserts that both Plaintiff and Lt. Lacoste requested transfers, but "it is

---

[13] See Discussion, part (I)(c)(2), *infra*.
[14] *Holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993), and *holding modified by Wilmot v. Forest City Auto Parts*, 75945, 2000 WL 804616 (Ohio Ct. App. June 22, 2000)

not disparate treatment when an employee subjected to aggravated sexual offenses is accommodated in a different manner than an employee that was not sexually offended" (doc. 18, p. 7).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1). Title VII also forbids an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(2).

To make out a prima facie case for disparate treatment, a plaintiff must establish four elements: (1) she is a member of a protected group; (2) she applied and was qualified for a position; (3) she was rejected; and (4) the position remained open and the employer continued to seek applicants. *McDonnell Douglas*, 411 U.S. at 802. These prima facie requirements are flexible depending on the particular factual situation involved in an individual case. *Id.* at 802, n.13. In other words, "the method established in *McDonnell Douglas* . . . was never intended to be rigid, mechanized or ritualistic." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978). Furthermore, it is not a pleading standard, but an "orderly way to evaluate the evidence . . . as it bears on the critical question of discrimination." *Id.*

In the instant case, the Court finds that Plaintiff's complaint pleads sufficient facts to establish a plausible right to relief under Title VII. Therefore, Defendant's 12(b)(6) motion to dismiss this part of the complaint is denied.

### c. Plaintiff's Discrimination Claim under the FMLA

The Court declines to address whether Plaintiff's claim for retaliation under the FMLA should be dismissed under Rule 12(b)(6) as it does not have subject matter jurisdiction over this claim.[15]

### d. Plaintiff's Claim for Punitive Damages

Defendant alleges that punitive damages are disallowed in the present matter "under all statutory authority asserted by Plaintiff herein, including the FMLA, ADA, and Title VII." (doc. 13-1, p. 17-18) Plaintiff asserts that the argument over which statutes allow for punitive damages is premature for a Rule 12(b)(6) motion (doc.15, p. 8-9). Plaintiff further asserts that Title VII, the ADA, and the ADEA allow for punitive damages (doc.15, p. 9). Plaintiff asserts that Defendant is wasting this Court's time with its argument regarding punitive damages under § 1981 (doc.15, p. 9).

### 1.     Punitive Damages under the FMLA

The FMLA sets forth the types of damages recoverable under 29 U.S.C. §2617(a), creating liability for damages only for actual monetary losses.  29 U.S.C. § 2617 (a); *See also Oby v. Baton Rouge Marriott*, 329 F. Supp. 2d 772, 788 (M.D. La. 2004). As such, the FMLA does not provide for recovery of punitive damages. *Oby*, 329 F. Supp. 2d 772*; accord Farrell v. Tri-Country Metropolitan Transp. Dist. of*

---

[15] See Discussion, part (I)(c)(3), *infra*.

*Oregon,* 530 F.3d 1023, 1025 (9th Cir. 2008). Therefore, Plaintiff's claims for punitive damages under the FMLA are dismissed as a matter of law.

### 2.        Punitive Damages under the ADA and Title VII

Pursuant to 42 U.S.C. § 1981(a), plaintiffs asserting Title VII or ADA claims that are unavailable under section 1981 are allowed to recover compensatory and punitive damages. 42 U.S.C. § 1981(a)(1–2).[16]

However, the Act also precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions:

> A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice

---

[16] Subsection (a)(1) applies to claims under Title VII and provides:
> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 . . . against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act . . . , and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

Subsection (a)(2) applies to claims asserted under the ADA and provides:
> In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 . . . (as provided in section 107(a) of the Americans with Disabilities Act of 1990 . . . , and section 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of Title 29 and the regulations implementing section 791 of Title 29, or who violated the requirements of section 791 of Title 29 or the regulations implementing section 791 of Title 29 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 . . . , or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

21

or with reckless indifference to the federally protected rights of
an aggrieved individual.

42 U.S.C. § 1981 (b) (emphasis added). Therefore, Plaintiff's claims for punitive

damages under the ADA and Title VII are dismissed.


## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject

matter jurisdiction is GRANTED in part and DENIED in part. Furthermore,

Defendant's motion to dismiss for failure to state a claim upon which relief may be

granted is GRANTED in part and DENIED in part.

Baton Rouge, Louisiana, November 24, 2012.

_____

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA