UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| EDWINA F. FIELDS | CIVIL ACTION NO. 11-101 |
|---|---|
| V. | JUDGE JOHN W. deGRAVELLES |
| DEPARTMENT OF PUBLIC SAFETY, AND ELAYN HUNT CORRECTIONAL CENTER | MAG. JUDGE RICHARD L. BOURGEOIS |
| | JURY TRIAL |

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on the Motion for Summary Judgment (R.Doc. 47) filed by Defendant, State of Louisiana, Department of Public Safety and Corrections ("Defendant"). Plaintiff Edwina F. Fields ("Plaintiff") opposes the motion. Oral argument is not necessary, as the parties have submitted numerous, extensive briefs and discussed some of the issues related to this motion at the October 7, 2014, status conference.

After carefully considering the law, facts in the record, and arguments of the parties, the Court grants the motion for summary judgment in part and denies the motion in part. All claims against the Defendant are dismissed except Plaintiff's claims (1) for disparate treatment for Defendant's alleged failure to transfer her to the 24-Hour Unit Ward and failure to transfer her out of the HSU and D1 Cellblocks, and (2) for hostile work environment for Lt. Col. Jackson allegedly moving her desk so that a prisoner could more easily masturbate, for the officers' alleged request to stop writing Rule 21 violations, and for being exposed generally to watching inmates masturbate and having them do so on her.

**I. Relevant Factual Background**

Plaintiff Edwina Fields was hired by defendant, Louisiana Department of Public Safety and Corrections, in October 1989. After six months, plaintiff was promoted to a sergeant and

worked as one from 1989 to 1996. (Fields Deposition, p. 25). Plaintiff was then promoted to Master Sergeant and remained as one until her retirement. (Id., p. 26).

Plaintiff, an African-American female, brings this Title VII action alleging she was discriminated against by the Defendant on the basis of her sex and race. The facts of this case are somewhat convoluted as the allegations vary from the EEOC Charge of Discrimination, to the Amended Complaint, and to the facts asserted in Plaintiff's briefs in support of her motion for summary judgment. The Court will review each briefly and discuss the incidents at issue in greater detail below.

In Plaintiff's EEOC Charge of Discrimination (Defendant's Exhibit L, Doc. 47-14, p. 3), Plaintiff alleges she was "subject to unfair treatment in that [she] was denied an award, denied a reasonable accommodation, denied a position in the 24 Unit Ward, assigned to areas where [she] was not trained, rotated out in stressful areas, and attacked by different inmates at different times." Plaintiff further states that, "According to my employer, I was not given an award because I was out on Family Medical Leave. No reason was given for the other actions taken against me." (Id.). Plaintiff concluded, "I believe I have been discriminated against because of my race, Black and sex, female in violation of Title VII of the Civil Rights Act of 1964, as amended. I further believe I have been discriminated against because of my disability in violation of the Americans with Disabilities Act and my age 42." (Id.)

In Plaintiff's Amended Complaint (R.Doc. 22), Plaintiff alleges discrimination because of her race and sex. Plaintiff claims she "became totally ill from stress at work and requested leave under the Family Medical Leave Act ("FMLA") and it was approved." (Amended Complaint, R.Doc. 22, ¶ 8). Fields returned to work on March 26, 2009 and was placed in the same highly stressful Hunt's Special Unit. (Id.).

2

Plaintiff also alleges acts of disparate treatment and sexual harassment in her Amended Complaint. Specifically, concerning disparate treatment, Plaintiff claims that she was denied an award when Billy Stone tried to hang himself because she took FMLA leave and because she was a woman. (Id., ¶ 9). Plaintiff further alleges that Defendant failed to transfer her from HSU because of her race and sex. (Id. ¶ 8). Additionally, Plaintiff claims that a white female Lt. Lacoste was assigned to D1 cell block and subjected to aggravated sexual offenses on assignment and was immediately removed whereas Fields was not (Id., ¶ 10). Plaintiff also claims that requested and applied for less stressful assignment in the 24 Hour Unit. (Id., ¶ 11). There was a vacant position that no one applied to. Fields did not get position; a white female got it. (Id.).

Concerning her sexual harassment and hostile work environment claims, Plaintiff alleges that Defendant failed to remedy a sexually hostile work environment that male inmates created. (Id., Preamble). Plaintiff claims she was exposed to men masturbating and using sexually explicit language while doing it; her boss was aware and did nothing. (Id.). Specifically, Plaintiff claims Lt. Col. Freddie Jackson asked her if she was on her period. (Id., ¶ 14), and inmate James Maryland exposed himself to Fields in the shift and was never charged with crime. (Id.) ¶ 15.

In her Contested Issues of Material Fact submitted with her Opposition to Motion for Summary Judgment (R.Doc. 71), Plaintiff asserts some new and some previously-asserted facts. Specifically, for the first time, plaintiff claims Lt. Col. Fred. Jackson orchestrated the position of her desk where plaintiff sat on D1Cell block near the F tier at the request of an inmate so the inmate could see Plaintiff as he masturbated. Plaintiff also claims for the first time that, when she located Randon Harris in his attempted suicide, another officer said, "'let him hang there a

while.'" Plaintiff claims that she was not trained for HSU tier, an allegation in her EEOC charge but not her complaint. Further, she alleges for the first time that she was told by Captain Childs and Lt. Donald Johnson that they would not write up inmates for Rule 21 violations; Childs said the DB Court did not want the write-ups. Plaintiff supposedly applied for position in 24 Hour Unit but a white female, Rebecca Lalonde, who did not apply and had less experience, received position. Further, Defendant removed a white female – Rebecca Lalonde - who complained to management about being in D1 cellblock while Defendant did not remove Plaintiff.

In her Memorandum in Opposition to Reply Brief, the Plaintiff provides a timeline which includes most of the above and more. For the first time, Plaintiff claims that she "received and [sic] aggrevated sexual offense from inmate Chad Smith." and was told by Captain Childs not to write up these inmates." [R.Doc. 78, p. 3]. Plaintiff also alleges more instances of guards collaborating with inmates to allow or facilitate their masturbation. (R.Doc. 78, p. 3). Finally, she claims she was forced to retire.

## II. Discussion

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(internal citations omitted). The

non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991).

**B. Analysis**

**1. Exhaustion of Remedies**

The first issue is whether the Court has jurisdiction over these claims. Defendant asserts that many of Plaintiff's claims are barred because Plaintiff failed to exhauster her administrative remedies. Specifically, defendant argues that the following claims are barred: (1) Plaintiff's claim for sexual harassment and hostile work environment; (2) the Randon Harris incident; and (3) "Plaintiff's assignment to D1 Cell Block and HSU"; and (4) the James Maryland inmate exposure incident. The Defendants claim that two and three occurred outside of the 300-day rule and that four occurred after the EEOC charge.

"[T]he filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII." *Jeavons v. Exxon Mobile Corp.*, No. 13-753, 2014 WL 897425, slip op. at *2 (M.D.La. 2014) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970). The Fifth Circuit has explained the Title VII exhaustion requirement and said:

The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, "[a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." With that balance in mind, this court interprets what is properly embraced in review of a Title—VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.

*Pacheco v. Mineta*, 448 F.3d 783, 788-789 (5th Cir. 2006) (internal citations omitted). As this Court explained:

> The Fifth Circuit went on to say [in *Pancheco*] that it does "not require that a Title—VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." Nor does it "require, for purposes of exhaustion, that a plaintiff allege a prima face case before the EEOC." "Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger."

*Jeavons*, 2014 WL 897425, slip op. at *2 (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788-789 (5th Cir. 2006)).

Here, the sole allegation related to harassment contained in the EEOC Complaint is that Plaintiff was "attacked by different inmates at different times." (Charge of Discrimination, Defendant's Exhibit L, Doc. 47-14, p. 3). Plaintiff's hostile work environment claims can reasonably be expected to grow out of these charges.[1] Looking at the substance of her EEOC

---

[1] Specifically, Plaintiff asserts four main hostile work environment claims in her Amended Complaint and briefs. First, Plaintiff claims that she overheard a prisoner ask Lt. Col. Jackson to move the desk so that he could masturbate and that Lt. Col. Jackson accommodated the request. Second, Plaintiff claims that a supervisor made a single remark asking Plaintiff whether she was on her menstrual period. Third, Plaintiff claims that James Maryland exposed himself to the Plaintiff and that the Plaintiff failed to take corrective

6

charge, each of the incidents could reasonably be expected to flow from and triggered by the vernacular phrase that she was "attacked." Accordingly, the Plaintiff exhausted her administrative remedies on this issue.

As will be discussed below, the Randon Harris incident is beyond the scope of the Amended Complaint. Thus, the Court will not consider these allegations, and they are dismissed.

The Defendant does not sufficiently articulate what claim she is attacking by the language "Plaintiff's assignment to D1 Cell Block and HSU." Further, the Plaintiff does not appear to assert this claim – rather, the alleged racism and sexism was Defendant's failure to transfer from D1 Cell Block and HSU, not the initial assignment thereto. This appears to occur, for instance, on June 15, 2009, with Field's denial for a position in the 24-hour unit, and thus one related action occurred within the 300-day window preceding the EEOC charge.

Finally, the James Maryland incident, which occurred after the EEOC charge, is still actionable. "A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061 (2002). Here, even if the Maryland incident occurred outside the period, it was part of the same alleged unlawful employment practice, and one act fell within the time period.

Thus, except as specifically detailed, Plaintiff adequately pursued her administrative remedies.

---

steps. And fourth, Plaintiff makes general allegations that she was subject to watching inmates masturbate and having them do so on her.

## 2. Allegations Outside of The Complaint

As explained above, Defendant has asserted that Plaintiff raised new factual allegations that are beyond the scope of the Amended Complaint. The Court has reviewed the Amended Complaint (R.Doc. 22) and Contested Issues of Material Fact (R.Doc. 71, p. 1-2) and finds the following allegations are potentially at issue: (1) that when Plaintiff located inmate Randon Harris in his attempted suicide, a fellow guard said, "Let him hang there a while,"; (2) that Plaintiff never received training for the HSU tier; (3) that Plaintiff was told by Captain Childs and Lt. Donald Johnson that they would not write up inmates for Rule 21 violations and that Childs said the DB Court did not want the write-ups; (4) that Lt. Col. Freddie Jackson purportedly helped the inmates masturbate by positioning Plaintiff's desk; and (5) that a white female – specifically Rebecca Lalonde - did not apply for the position in the 24-hour unit but received it despite having less experience than Plaintiff (R.Doc. 22, p. 4),

The first and second of these allegations go beyond the scope of the Amended Complaint. Accordingly, the Court grants the Motion for Summary Judgment as to these arguments.[2]

---

[2] "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. A party may not amend her complaint by raising new arguments in her brief in opposition to a motion for summary judgment; rather, the party must bring a motion to amend the complaint if she wishes to raise a new claim. *See Anderson v. DSM N.V.*, 589 F.Supp. 2d 528, 535 n. 5 (D.N.J. 2008); *see also, e.g.*, *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)"); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996) ("A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment").

Even if Plaintiff had sought an amendment, and even if Defendant had not objected, this Court would be deny a motion to amend. "In exercising its discretion [to grant an amendment], the trial court may consider such factors as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, (and) futility of amendment.'" *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981) (Citations omitted). Here, "the plaintiff must meet the burden of showing that the delay "was due to oversight, inadvertence, or excusable neglect." *Id.* This case is set for trial on December 1, 2014, less than two months away. According to Defendants, the plaintiff knew of the above

Construing the pleadings liberally, the remaining allegation falls within the scope of the Amended Complaint. Concerning the third and fourth of these allegations, the Plaintiff pled in their Amended Complaint, "Hence, prison management participated and encouraged known sexual harassment of its female employees and did not stop or mitigate the misconduct," and that "a bigger problem remained to continue perceptually using prisoners in the management scheme to effectively harass female sergeants and other women in the prison," (R.Doc. 22, ¶ 14). While Plaintiff made these allegations in connection with the alleged incident of inmate James Maryland exposing himself to the Plaintiff and the facilities' failure to properly discipline Maryland, not concerning the position of the desk or the prison's approach to Rule 21 violations, each of the allegations in the Amended Complaint, if true, clearly reflects a policy the prison has that directly leads to the sexual harassment of its employees by inmates. In sum, the third and fourth allegations are well within the scope of the initial scheme and misconduct alleged in the Amended Complaint.

Concerning the fifth allegation, while Defendant complains that Plaintiff did not name the white female who obtained a transfer to the 24-hour unit until a few days before the discovery cutoff, the Plaintiff did allege in her Amended Complaint that a white female received this promotion, which was sufficient. Accordingly, the Court will consider these allegations.

In sum, the allegations about Randon Harris' attempted suicide and lack of training are outside the Amended Complaint and are thus dismissed. On the other hand, the allegation about Plaintiff being told by her supervisors not to do write up, about her boss aiding inmates in

---

allegations as early as May 2014 and yet has not sought a continuance. Further, these allegations seem relatively irrelevant to the issues at hand.

9

masturbation, and about the 24-hour unit are not beyond the scope of – and reasonably from – the Amended Complaint.

### 3. Disparate Treatment

Title VII provides that "[i]t shall be an unlawful employment practice for an employer … to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove discrimination through direct or circumstantial evidence. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). If there is no direct evidence of discrimination, then Title VII claims based on circumstantial evidence are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804, 93 S.Ct. 1817 (1973). *Id.*

Under the *McDonnell Douglas* framework, a plaintiff must first establish a "prima facie" case of racial discrimination. If a plaintiff does so, an inference of intentional discrimination is raised. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)(citing *LaPierre v. Benson Nissan*, 86 F.3d 444, 448 (5th Cir.1996)). "[T]he employer must [then] rebut [the] presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Turner*, 476 F.3d at 345. "If the employer can provide a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for racial bias." *Lee*, 574 F.3d at 259. "If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be

sufficient to survive summary judgment." *Turner*, 476 F.3d at 345 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1094-1095 (1981)).

"Although the precise elements of [a prima facie] showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case 'is not onerous.'" *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)(citations omitted). The Fifth Circuit has explained that, "[t]o establish a prima facie case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee*, 574 F.3d at 259 (citations omitted).

Plaintiff alleges several instances of disparate treatment. First, she claims that she was not transferred to the 24 Hour Unit while a white female named Rebecca LaLonde applied for and got the job despite being less qualified. Second, Plaintiff claims she did not receive certain awards. Third, Plaintiff claims that Lt. Lacoste was moved from the allegedly hostile environment while Plaintiff was not. And fourth, Plaintiff claims that male supervisors made African American females work in toxic areas (HSU and D1 Cellblocks) while not making white females work these areas. The court will address each of these in turn.

### (a) The 24-Hour Unit Transfer

Concerning the 24 –Hour Unit claim, Defendant raises two main defenses. She claims a lateral transfer is not an actionable adverse employment action. She also claims Plaintiff received other transfers.

The Defendant correctly notes in her brief that "[i]t is well established that the denial of a purely lateral transfer is not an adverse employment action redressible under Title VII." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). But the Fifth Circuit has also recognized that "the denial of a transfer *may* be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits; if the position sought was objectively better, then the failure to award the position to the plaintiff can constitute an adverse employment action." *Id.* at 614. If the plaintiff fails to show that the positions constitute anything more than purely lateral transfers or that the positions are objectively better,[3] then summary judgment is appropriate." *See Zamora v. City of Houston*, 425 Fed.Appx. 314, 317 (5th Cir. 2011).

Neither party has submitted much evidence indicating Plaintiff's duties and responsibilities. Plaintiff has submitted evidence showing that the D1 Cellblock contained patients with mental health issues, that the offenders masturbated on guards and lured them into cells to perform Rule 21 violations, and that the inmates would subject the guards to verbal abuse consisting of F words and loud outbursts. (Tina Lacoste Deposition, p. 25, 32, R.Doc. 71-2). Further, in the HSU area, the prisoners don't have a tendency to eat or bathe, and the guards have to ensure that the inmates are showered and keep their cells clean, as they have mental

---

[3] The Fifth Circuit has explained:

> In determining whether the new position is objectively better, a number of factors may be relevant, including whether the position: entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious. This is an objective inquiry; neither the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion.

*Alvarado*, 492 F.3d at 611 (citations and footnote omitted).

problems. (Fields Deposition, p. 37-38, R.Doc. 71-4). The plaintiff testified that the 24-hour unit was "less stressful," though she provides scant evidence on what the 24-Hour Unit was like. (Fields Deposition, p. 205, R.Doc. 71-5).

Defendant submitted evidence in the form of several affidavits of co-workers downplaying many of Plaintiff's complaints. For example, in the affidavit of Tina Lacost (R.Doc. 47-11), Tina Lacost states that she "has observed sexually inappropriate behavior by inmates on a daily basis and that this occurs so frequently that it is sometimes more than you could count."

Nevertheless, reasonable minds could conclude that the 24-Hour Unit was objectively better than the position in the HSU given the conditions in the HSU. Accordingly, the Court will not grant summary judgment on this issue of discrimination.

The fact that Plaintiff received other transfers is irrelevant to the first element in the *McDonnell Douglas* framework for this claim. Plaintiff has still satisfied all elements and thus survived summary judgment on this issue.

### (b) Awards

"Only ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating satisfy the adverse employment action element. … Title VII does not, however, address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (citations and internal quotations omitted).

Defendant correctly notes that the Fifth Circuit has held that the denial of a performance award is not an adverse employment action. *Washington v. Veneman*, 109 Fed.Appx. 685, 689,

2004 WL 2137444, at *3 (5th Cir. 2004). Thus, as a matter of law, these claims should be and hereby are dismissed.

### (c) Lt. Lacoste's Transfer

As stated above, the final element of the prima facie part of the *McDonnell Douglas* framework is that the employee "was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, *under nearly identical circumstances*." *Lee*, 574 F.3d at 259 (citations omitted) (emphasis added). Defendant in effect argues that the transfer of Lt. Lacoste was not "under nearly identical circumstances" because Lt. Lacoste was a different type of employee.

The Court agrees that summary judgment should be granted on this claim. The uncontested facts show that Lt. Lacoste, unlike Plaintiff, was a supervisor during the times at issue and worked as an EMT. Supervisors and EMTs were subject to being transferred or reassigned, based on institutional need, on a much more frequent basis than non-supervisory correctional officers. Thus, the transferring Lt. Lacoste was materially different than transferring Plaintiff would have been. Accordingly, Plaintiff has failed to satisfy her prima facie case requirement on the transfer of Lt. Lacoste, so this claim is dismissed.

### (d) HSU and D1 Cell Block

Plaintiff claims, "Male supervisors made these African American females work these toxic areas repeatedly day in and day out performing 12 hour shifts. White females were not required to work these areas." (R.Doc. 71, p. 7). For the reasons identified above in the discussion about the 24-Hour Unit Transfer, the Court finds that Plaintiff has survived summary judgment on her claim of disparate treatment in having to work in the HSU and D1 Cell Bock.

### 1. Hostile Work Environment

The Fifth Circuit has explained:

> To establish a hostile work environment claim, [Plaintiff] must demonstrate that: (1) she is member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.

*Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434. However, an employee claiming harassment by a supervisor need not prove the last element of that test. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). The Fifth Circuit has further explained:

> For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." In determining whether an environment is "hostile" or "abusive" within the meaning of Title VII, courts look at the totality of the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. We have also considered whether the complained of conduct undermines the plaintiff's workplace competence. To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.

*Harvill*, 433 F.3d at 434 (citations and internal quotations omitted).

Plaintiff asserts four main hostile work environment claims in her Amended Complaint and briefs. First, Plaintiff claims that she overheard a prisoner ask Lt. Col. Jackson to move the desk so that he could masturbate and that Lt. Col. Jackson accommodated the request. Second, Plaintiff claims that a supervisor made a single remark asking Plaintiff whether she was on her menstrual period. Third, Plaintiff claims that James Maryland exposed himself to the Plaintiff and that the Plaintiff failed to take corrective steps. And fourth, Plaintiff makes general allegations that she was subject to watching inmates masturbate and having them do so on her.

Concerning the first, Defendant has submitted evidence suggesting that Lt. Col. Jackson never conversed with the inmate about masturbation and never moved the desk to facilitate the

15

same. However, at this stage, the Court is not supposed to weigh the evidence. Construing the facts in a light most favorable to the Plaintiff, she has submitted proof of an incident sufficiently severe in nature to at least create an issue of fact to survive summary judgment.

The single isolated comment about Plaintiff's period is not sufficient to establish a hostile work environment. As this Court has recognized in a Title VII racial discrimination suit:

> The mere utterance of an ethnic or racial epithet that engenders offensive feelings in an employee, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. Rather, the plaintiff must establish that the harassment complained of was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment."

*James v. Lane*, No. 12-523, 2014 WL 4809272, slip op. at *7 (M.D. La. 2014) (citations omitted). The Fifth Circuit is replete with instances in which a few isolated comments were insufficient to establish Title VII liability. *E.g., Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996) (single offensive joke about condoms in plaintiff's presence was insufficient to prove hostile work environment claim); *Mosley v. Marion County, Miss.*, 111 Fed. Appx. 726, 728 (5th Cir. 2004) (evidence of three instances of using racial slurs was insufficient to establish a genuine issue of material fact for a hostile work environment claim). Here, the alleged comment made by Jackson, even if true, would, as a matter of law, be insufficient to survive summary judgment. This claim is dismissed.

Finally, Plaintiff makes a general claim about being subjected to lewd conduct by prisoners, including James Maryland exposing himself. In *Wheat v. Florida Parishes Juvenile Justice Commission*, No. 12-2989, 2014 WL 2155239 (E.D.La. May 22, 2014), the Eastern District held that the Florida Parishes Justice Commission would not impute the acts of a juvenile inmate to an employer detention center. The Eastern District explained:

> The Fifth Circuit apparently has yet to address under what circumstances and by which standards liability for sexual harassment by juvenile inmates may be imputed to employer detention centers. The Tenth Circuit, in an unpublished opinion, has held that adult inmate conduct is per se not imputable to a prison. *Maine v. Oklahoma Dept. of Corrections*, No. 97–6027, 1997 WL 602688, at *2 (10th Cir.1997); *see also Powell v. Morris*, 37 F.Supp.2d 1011, 1017 (S.D.Ohio 1999)("Prison employees inherently assume the risk of some rude inmates. It is absurd to expect that a prison can actually stop all obscene comments and conduct from its inmates-people who have been deemed unsuited to live in normal society.") The Sixth Circuit, on the other hand, has acknowledged that by "choosing to work in a prison, corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior[,]" but nevertheless allowed for prison liability where a prison guard's coworker "encouraged, endorsed, and even instigated the inmates' harassing conduct." *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 677–78 (6th Cir.2000). Similarly, the Eight Circuit has held that "in absence of special circumstance ... the conduct of [juvenile] inmates cannot be attributed to an employer in order to show that the harassment affected a term, condition, or privilege of employment." *Id. Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir.2007).

*Id.* at *5. Because the plaintiff had not proven or alleged either that the twelve-year old's harassment was objectively severe and pervasive under the circumstances or culpability on the part of the Commission sufficient to attribute the twelve-year old's actions to the body, the Court granted the Commission's summary judgment.

The Court will apply the same standard employed by *Wheat*. The Plaintiff has stated an issue of material fact that survives summary judgment as to the Plaintiff's claims for general inmate misconduct. Plaintiff has submitted evidence that the inmate sexual misconduct was pervasive in the HSU. Further, Plaintiff has submitted some evidence that the facility was culpable; she claims that she was no longer instructed to submit Rule 21 violations and that Lt. Col. Jackson actually aided one inmate in sexually harassing the Plaintiff. At the very least, Plaintiff has survived summary judgment on this issue.

However, Plaintiff has not survived summary judgment on the James Maryland incident. Plaintiff complains that Maryland exposed himself to her, which is arguably sufficiently severe.

17

However, Plaintiff has not submitted sufficient proof of culpability by the Defendant. While Plaintiff complains that the investigation of the exposure incident was shoddy, there appears to be no issue of fact that the Defendant initially placed Maryland into administrative segregation, administered an investigation into the incident, interviewed Maryland about the occurrence, and performed lie-detector tests on the inmate and on the Plaintiff. Based on the lie detector test results and Maryland's history of having no disciplinary reports in the past few years and no Rule 21 (sexual offenses) at all, the Defendant released Maryland from Administrative Lockdown and transferred him to another assignment. In sum, the Defendant took plaintiff's accusations seriously, performed a full investigation consisting of interviews and polygraph and drug tests, and reviewed the inmate's record. There is simply not enough evidence for a reasonable juror to conclude that the prison acted culpably with respect to the James Maryland incident.

In sum, Plaintiff's claims for hostile work environment for Jackson's remark about Plaintiff's period and for the James Maryland incident are dismissed. Plaintiff's alleged claims for Jackson positioning the desk, for the facility refusing to allow Rule 21 violations, and for general inmate misconduct survive summary judgment.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (R.Doc. 47) is **GRANTED IN PART** and **DENIED IN PART;** and

**IT IS FURTHER ORDERED** that all claims against the Defendant are dismissed except Plaintiff's claims (1) for disparate treatment for Defendant's alleged failure to transfer her to the 24-Hour Unit Ward and failure to transfer her out of the HSU and D1 Cellblocks, and (2)

for hostile work environment for Lt. Col. Jackson allegedly moving her desk so that a prisoner could more easily masturbate, for the officers' alleged request to stop writing Rule 21 violations, and for being exposed generally to watching inmates masturbate and having them do so on her.

Signed in Baton Rouge, Louisiana, on <u>November 6, 2014</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**